United States District Court
Northern District of California

SAN JOSE OPTIONS, INC.,

    Plaintiff,

v.

HO CHUNG YEH,

    Defendant.

Case No.: CV 14-00500-KAW

ORDER GRANTING MOTION TO DISMISS WITH LEAVE TO AMEND

Ho Chung Yeh moves to dismiss San Jose Options, Inc.'s first, second, fourth, and fifth causes of action as well as certain prayers for relief. The motion has been fully briefed. Having considered the papers filed by the parties and the arguments offered by counsel during the hearing on the matter, the Court grants the motion with leave to amend.

## I.     BACKGROUND

### A.     Factual background

San Jose Options, Inc. ("Plaintiff") operates an "online options trading school," which offers online classes designed to teach students proprietary stock option trading strategies. (Compl. ¶ 6, Dkt. No. 1.) Course materials include manuals, which contain explanations of many "proprietary advanced [trading] strategies, each of which contains unique 1) option trading structure architectures to initiate trades; [and] 2) adjustment processes to manage a trade known as the adjustment system." (*Id.* ¶ 16.) These trading strategies include the "Unbalanced Condor," the "Broken Wing Butterfly," and the "Front-ratio Spread." (*Id.* ¶ 17.)

Plaintiff also teaches an option trading process known as the "Revolver Adjustment" system, which contains a unique and original proprietary formula known as the "DV Ratio." (*Id.* ¶ 18.) This "formula concentrates on developing a method to understand and manage the direction of an option spread based on a correlation between the volatility movement and price

movements." *(Id.)* Plaintiff describes all of this proprietary material as the "SJ Options Copyright." *(Id.* ¶ 19.)

Any student participating in Plaintiff's online course is required to accept Plaintiff's online terms of service, which include a non-disclosure agreement, "[a]s a condition precedent [to] paying for an online course, and at each time before a student can login to access any of the proprietary content hosted online." *(Id.* ¶ 20.) Students accept these terms by the click of a button, and Plaintiff asserts that requiring a student to do so "exhibit[s] a strong attempt to retain control over all content located behind the password protected website." *(Id.* ¶ 21.)

Ho Chung Yeh ("Defendant"), who operates a competing online stock options trading course website, joined Plaintiff's online course on February 3, 2010. *(Id.* ¶¶ 8, 26.) Between February 3, 2010 and October 22, 2012, Defendant accessed Plaintiff's website about ten times, for various periods of time, including one session that spanned over a 48-hour period. *(Id.* ¶¶ 22, 25.) Plaintiff claims that Defendant "downloaded many if not all of SJ Option's instructional videos." *(Id.* ¶ 24.)

Defendant identified himself via email correspondence using the pseudonym "Mike." *(Id.* ¶¶ 27, 28.) He befriended Plaintiff's principal, Mr. Puma, through multiple emails, testimonials, and written correspondence. *(Id.* ¶ 28.) As a result of this relationship, Mr. Puma taught and educated Defendant on Plaintiff's proprietary material over the course of 170 emails, live classes, video recordings, trading manuals, and personal mentoring sessions. *(Id.* ¶ 29.)

On January 2010, Defendant's website offered only one basic course in options strategies that were well known in the stock options industry, including the strategies known as "iron condor," "calendar spreads," and "butterfly spreads." *(Id.* ¶ 31.) In April 2010, two months after Defendant acquired access to Plaintiff's proprietary online content, Defendant advertised an upcoming new advanced course, which he began teaching in July 2011. *(Id.* ¶¶ 32-34.)

When Defendant joined Plaintiff's online course, Defendant never disclosed that he was the owner of the competing website. *(Id.* ¶ 35.) Plaintiff first learned of a possible connection between its website and Defendant's website on December 10, 2011, when a student, who was enrolled in both courses, notified Mr. Puma that Defendant was possibly selling the same

strategies that Plaintiff offers to its own students. (*Id.* ¶ 38.) Plaintiff conducted an initial investigation, which it abandoned, due to its inability to access Defendant's password-protected content or determine the website's owner. (*Id.* ¶¶ 39-40.)

On April 14, 2013, while Mr. Puma was conducting a live demonstration of Plaintiff's proprietary trading techniques to potential students, he was approached by another individual who claimed that he had learned the same content, including Plaintiff's "Revolver Adjustment" system, while taking Defendant's advanced course. (*Id.* ¶ 41.) Mr. Puma then received copies of Defendant's advanced course materials and confirmed that Defendant's manuals contained all three of Plaintiff's proprietary strategies and that Defendant claimed original ownership of the material. (*Id.* ¶ 42.) Plaintiff asserts that Defendant misappropriated and used its "DV Ratio" technique without changing the name and by misapplying the concepts behind the technique in a logically and mathematically impossible way that could be detrimental to Defendant's students and indirectly affect Plaintiff's reputation as the originator of the technique. (*Id.* ¶ 44.)

Plaintiff claims that Defendant misappropriated the content of the following trade strategy structures: (1) the "Unbalanced Condor," which Defendant renamed as "Butter Condor," (2) the "Broken Wing Butterfly," which Defendant renamed as "Ratio Butterfly," and (3) the "Front-ratio spread," which Defendant renamed as "Ratio Vertical." (*Id.* ¶¶ 45-47.)

Mr. Puma directly emailed Defendant's website and requested that Defendant cease and desist his infringing activities. (*Id.* ¶ 49.) Upon receipt of that cease and desist notification, Defendant immediately removed the link for its advanced course and deleted all images relating to Defendant's option courses from its website. (*Id.* ¶¶ 50-51.) Plaintiff claims that as a result of Defendant's acts, it incurred significant losses in 2013 from a decrease in tuition revenue when many potential students chose to enroll in Defendant's advanced course instead of Plaintiff's. (*Id.* ¶ 48.)

### B.    Procedural background

On January 31, 2014, Plaintiff filed his complaint, asserting claims for (1) copyright infringement; (2) false designation of origin/unfair competition under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125; (3) breach of the non-disclosure agreement; (4) breach of

confidence; and (5) unfair competition under common law and California Business and Professions Code section 17200.  (Compl. ¶¶ 55-61, 62-69, 70-78, 79-86, 87-92.)  On March 13, 2014, Defendant moved to dismiss Plaintiff's claims, except for the third cause of action for breach of the non-disclosure agreement.  (Def.'s Mot., Dkt. No. 8.)  Plaintiff filed its opposition on March 27, 2014.  (Pl.'s Opp'n, Dkt. No. 13).  Defendant's reply followed on April 3, 2014.  (Def.'s Reply, Dkt. No. 14.)  A hearing on the motion was held on April 17, 2014.

## II.   LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a party may file a motion to dismiss based on the failure to state a claim upon which relief may be granted.  A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the claims asserted in the complaint.  *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).

In considering a 12(b)(6) motion, the court must "accept as true all of the factual allegations contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (citation omitted), and may dismiss the case or a claim "only where there is no cognizable legal theory" or there is an absence of "sufficient factual matter to state a facially plausible claim to relief." *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009)).

A claim has facial plausibility when a plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citation omitted).  In other words, the facts alleged must demonstrate "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  "Threadbare recitals of the elements of a cause of action" and "conclusory statements" are not adequate.  *Iqbal*, 556 U.S. at 678; *see also Epstein v. Wash. Energy Co.*, 83 F.3d 1136, 1140 (9th Cir. 1996) ("[C]onclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss for failure to state a claim.").  "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. . . .  When a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility

and plausibility of entitlement to relief." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557) (internal citations omitted).

Generally, if the court grants a motion to dismiss, it should grant leave to amend even if no request to amend is made "unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (quoting *Cook, Perkiss and Liehe, Inc. v. N. Cal. Collection Serv. Inc.*, 911 F.2d 242, 247 (9th Cir. 1990)).

### III. DISCUSSION[1]

#### A. Plaintiff cannot state a viable copyright infringement claim.

To establish a claim for copyright infringement, a plaintiff must show: (1) ownership of a valid copyright and (2) copying of constituent elements of the work that are original. *Jim Marshall Photography, LLC v. John Varvatos of Cal.*, No. C-11-06702 DMR, 2013 WL 3339048, at * 4 (N.D. Cal. June 28, 2013) (citing *Feist Publ'ns v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991)). A plaintiff may not bring an action for infringement unless he has preregistered or registered the subject work with the U.S. Copyright Office. 17 U.S.C. § 411(a); *see Cosmetic Ideas, Inc. v. IAC/Interactive Corp.*, 606 F.3d 612, 616 (9th Cir. 2010).

Defendant argues that since registration, or an application for registration, is a prerequisite for a copyright infringement claim, the lack of any allegation that Plaintiff ever registered, or applied to register, its purported SJ Options Copyright is fatal to its copyright infringement claim. (Def.'s Mot. at 6.) In its opposition, Plaintiff concedes that "its claims are unregistered" and goes so far as to request leave "to replace the copyright infringement claim with an allegation that Defendant violated Plaintiff's trade secrets." (Pl.'s Opp'n at 2.)

In light of the foregoing, the Court dismisses Plaintiff's copyright infringement claim without leave to amend. With respect to Plaintiff's request for leave to amend the complaint to include a claim for misappropriation of trade secrets, the request does not comply with Civil Local Rule 10-1, which requires that "any party filing or moving to file an amended pleading

---

[1] Defendant asks that the Court take judicial notice of various documents generated from the U.S. Copyright Office's website. Def.'s Req. for Judicial Notice, Dkt. No. 9. Given that Plaintiff concedes that it does not have a copyright claim, the Court denies the request as moot.

reproduce the entire proposed pleading and may not incorporate any part of a prior pleading by reference."

Accordingly, Plaintiff may file a properly noticed motion for leave to file an amended complaint that includes Plaintiff's proposed cause of action for misappropriation of trade secrets, or the parties may stipulate to the filing of such an amended pleading. Any such motion or stipulation shall be filed within 14 days of this order, in which case Plaintiff shall file its amended complaint as an exhibit to the parties' stipulation or as an exhibit to Plaintiff's motion. This way, Plaintiff need only file a single amended complaint that includes the proposed cause of action and cures the deficiencies discussed below. If no motion or stipulation is filed within 14 days of this order, then Plaintiff shall file an amended complaint curing the deficiencies discussed above, but not including a new claim for misappropriation of trade secrets, within 30 days of this order.

### B. Plaintiff's Lanham Act claim for false designation of origin/unfair competition is dismissed with leave to amend.

The Lanham Act was intended to make actionable the deceptive and misleading use of marks, and to protect persons engaged in commerce against unfair competition. 15 U.S.C. § 1127. § 43(a) of the Act imposes civil liability on:

> Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which . . . is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person . . . .

15 U.S.C. § 1125(a)(1).

Defendant argues that *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23 (2003) bars Plaintiff's Lanham Act claim for false designation of origin/unfair competition.[2] (Def.'s Mot. at 10-11.) In *Dastar*, the Supreme Court held that Twentieth Century Fox could not bring a false designation of origin claim under § 43(a) where the defendant, Dastar, had copied,

---

[2] A false designation of origin claim is not distinct from a claim for unfair competition, but simply a species of unfair competition actionable under § 43(a). *Champions Golf Club, Inc. v. The Champions Golf Club, Inc.*, 78 F.3d 1111, 1122-23 (6th Cir. 1996).

6

edited, repackaged, and sold, as its own, a Fox television series which had entered the public domain after Fox's copyright had lapsed. *Id.* at 27-28, 37-38. That case involved a "reverse passing off" claim,[3] stemming from the allegation that Dastar had misrepresented the series as its own. *Id.* at 27 & n.1.

The Supreme Court determined that Fox did not have a § 43(a) claim for false designation of origin because Dastar was in fact the "origin" of the physical videotapes, which Dastar had copied, edited, and repackaged. *Id.* It held:

> In sum, reading the phrase "origin of goods" in the Lanham Act in accordance with the Act's common-law foundations (which were *not* designed to protect originality or creativity), and in light of the copyright and patent laws (which *were*), we conclude that the phrase refers to the producer of the tangible goods that are offered for sale, and not to the author of any idea, concept, or communication embodied in those goods. To hold otherwise would be akin to finding that § 43(a) created a species of perpetual patent and copyright, which Congress may not do.

*Id.* at 37 (citations omitted).

Here, Plaintiff alleges that "in connection with Defendants' advertisement, promotion, distribution, sales, and offers of sales of their goods, Defendants have used, and continue to use in commerce, Plaintiff's 'DV Ratio' and related stock option adjustment trading strategies." (Compl. ¶ 63.) Plaintiff also alleges that "Defendants have affixed, applied, and used false designations of origin and false and misleading descriptions and representations, including the 'DV Ratio' and related stock option adjustment trading strategies, which tend to falsely describe the origin, sponsorship, association, or approval by SJ Options of Defendants' use of the 'DV Ratio' and related stock option adjustment strategies." (*Id.* ¶ 64.)

These allegations seek to impose Lanham Act liability based on Defendant's use of Plaintiff's ideas, namely, its strategies and formulas. In its opposition, Plaintiff argues that "Defendant has taken Plaintiff[']s proprietary stock option trading techniques –hook, line, and sinker – and repackaged them as his own." (Pl.'s Opp'n at 5.) Despite Plaintiff's contention to the contrary, *Dastar* precludes such claims. *See* 539 U.S. at 37 (the origin of goods within the meaning of § 43(a) does not extend to the origin of the ideas contained within those goods).

---

[3] In contrast, "[p]assing off (or palming off, as it is sometimes called) occurs when a producer misrepresents his own goods or services as someone else's." *Dastar*, 539 U.S. at 27 n.1.

As Defendant himself concedes, however, "taking tangible goods and reselling them as one's own constitutes a Lanham Act violation." (Def.'s Opp'n at 11.) Therefore, to the extent that Plaintiff may be able to allege that Defendant took Plaintiff's tangible goods, such as Plaintiff's proprietary education materials, and not just only the content contained in those materials, which Defendant then held out as his own, Plaintiff may be able to state a viable Lanham Act claim. Indeed, the Supreme Court in *Dastar* recognized that Fox's false designation of origin claim "would [have] undoubtedly be[en] sustained if Dastar had bought some of New Line's Crusade videotapes and merely repackaged them as its own." 539 U.S. at 31. In this case, the conduct complained of may very well resemble this hypothetical, and Plaintiff is entitled to leave to amend the complaint if that is, in fact, the case. The Court is thus unpersuaded by Defendant's assertion that Plaintiff "has not accused – ***and cannot legitimately accuse*** – Defendant . . . of taking Plaintiff's physical materials, repackaging them, and selling them under Defendant's name." (Def.'s Opp'n at 12.)

Moreover, leave to amend this claim is warranted for an additional reason. In its opposition, Plaintiff argues, for the first time, that Defendant misappropriated some of its marks, including the "DV Ratio," without even changing the name, and other marks, such as the "Unbalanced Condor," and the "Broken Wing Butterfly," by altering the name only slightly. (Pl.'s Opp'n at 6.) Though this argument does not coincide with any allegations in the complaint, "[f]ederal courts have long held that § 43(a) of the Lanham Act extends protection to unregistered trademarks[4] on the principle that unlicensed use of a designation serving the function of a registered mark constitutes a false designation of origin and a false description or representation." *A.J. Canfield Co. v. Honickman*, 808 F.2d 291, 296 (3d Cir. 1986); *Dastar*, 539 U.S. at 32 ("Section 43(a) of the Lanham Act prohibits actions like trademark infringement that deceive consumers and impair a producer's goodwill."). In this respect, Plaintiff may be able to state a viable claim for false designation of origin/unfair competition. *See Brookfield Commc'ns, Inc. v.*

---

[4] A trademark is a "word, name, symbol, or device" that is intended "to identify and distinguish [the mark holder's] goods, including a unique product, from those manufactured or sold by others and to indicate the source of the goods." 15 U.S.C § 1127.

8

*West Cost Enm't Corp.*, 174 F.3d 1036, 1046 n.8 (9th Cir. 1999) (a claim for false designation of origin/unfair competition under § 43(a), which is analyzed under the same standard as a trademark infringement claim under § 32, requires a showing that the use of one's trademark is likely to cause confusion as to the source of the product).

Accordingly, Plaintiff's Lanham Act claim is dismissed with leave to amend.

### C. Plaintiff may be able to allege additional facts sufficient to establish a breach of confidence claim.

To prevail on a claim for breach of confidence under California law, Plaintiff must demonstrate that: (1) the plaintiff conveyed "confidential and novel information" to the defendant; (2) the defendant had knowledge that the information was being disclosed in confidence; (3) the defendant voluntarily received the information, with the understanding that the confidence was to be maintained; and (4) there was a disclosure or use in violation of the understanding. *Entm't Research Grp. Inc. v. Genesis Creative Grp., Inc.*, 122 F.3d 1211, 1226 (9th Cir. 1997) (citations omitted); *Faris v. Enberg*, 97 Cal. App. 3d 309, 324 (1979).

Defendant argues that Plaintiff's breach of confidence claim is improper because the proprietary information at issue is covered by the express terms of Plaintiff's non-disclosure agreement. (Def.'s Mot. at 13.) In advancing this argument, Defendant cites to *Berkla v. Corel Corp.*, 302 F.3d 909 (9th Cir. 2002) for the proposition that a breach of confidence claim exists only when it is created by an implied, not an express, contract.

Plaintiff contends that its breach of confidence claim is "based on separate and distinct factual averments" from those giving rise to its cause of action for breach of the non-disclosure agreement. (Pl.'s Opp'n at 7.) The allegations in the complaint lend support to this position, given that the non-disclosure agreement at issue governed "the disclosure of information by San Jose Options . . . to [the Recipient] . . . through live instruction classes," *see* Compl., Ex. A. For example, Plaintiff alleges that Defendant "befriended SJ Option's principal, Mr. Puma, through multiple emails, testimonials, and protected written correspondence." (Compl. ¶ 28.) Plaintiff avers that as a result, Mr. Puma "diligently taught and educated . . . [Defendant] . . . on the proprietary SJ Options material, over the course of approximately 170 emails, live classes, video recordings, trading manuals, and personal mentoring sessions." (*Id.* ¶ 29.) Plaintiff also claims

9

that Defendant "identified himself exclusively by the name 'Mike,' continuously praised the SJ Options techniques and requested more and more detailed instructions." (*Id.* ¶ 30.) In addition, Plaintiff alleges that "[t]hroughout the lengthy written correspondence between Plaintiff and Defendant Yeh, Plaintiff offered Defendant Yeh numerous proprietary stock option trading techniques that were under the explicit confidence of the Non-Disclosure Agreement signed by Defendant Yeh." (*Id.* ¶ 83.) To the extent that these allegations concern information that was communicated other than "through live instruction classes," and thus not covered by the non-disclosure agreement, *see* Compl., Ex. A, the claim for breach of confidence would rest on acts separate and distinct from those actionable under that agreement. Plaintiff, however, should clearly distinguish between information shared pursuant to the non-disclosure agreement and information shared in confidence.

   Moreover, leave to amend this cause of action is warranted for two different reasons. First, as Defendant argues, Plaintiff does not sufficiently allege that Defendant voluntarily received the information in confidence, i.e., that Defendant had the opportunity to reject the information he purportedly received in confidence before it was shared in confidence. (Def.'s Mot. at 14; Compl. ¶¶ 79-86.) Second, paragraph 85 of the complaint currently reads: "Defendant Yeh used the proprietary trading methodologies beyond the limits of the confidence with the express permission of SJ Options." While Defendant argues that this assertion causes Plaintiff's claim to fail as a matter of law, *see* Def.'s Mot. at 13, Plaintiff explains the use of "with" is a mere typographical error, as it intended to use the word "without," *see* Pl.'s Opp'n at 7.

   As these deficiencies may be cured, Plaintiff's claim for breach of confidence is dismissed with leave to amend.

   **D. Plaintiff's common law and statutory unfair competition claims are dismissed with leave to amend.**

   At common law, "'unfair competition' had a stable and relatively narrow meaning that focused on business practices that harmed competitors by deceiving customers." *Cel–Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (1999). This tort was rooted in "[t]he fundamental principle . . . that no man has the right to sell his goods as the goods of a rival

trader." *Id.* (internal citations and quotations omitted). It has, however, "been extended to situations other than classic 'passing off,' [though] deceptive conduct has remained at the heart of unfair competition." *Id.* at 180, n.1 ("In the prestatutory period, the one use of the term 'unfair competition' in the common law that developed outside the area of consumer deception was trade secret misappropriation."). "A case of unfair competition rests on confusion, or a likelihood of confusion, on the part of the public as a whole, acting as reasonable persons; it cannot rest on the fact that isolated individuals, whose capacity for discrimination is unknown, may have been momentarily confused." *Sunset House Distributing Corp. v. Coffee Dan's Inc.,* 240 Cal. App. 2d 748, 756 (1966).

In contrast, California's unfair competition law, codified in California Business and Professions Code sections 17200-17210, creates a cause of action for business practices that are: (1) unlawful, (2) unfair, or (3) fraudulent. *Henry v. Lehman Commer. Paper, Inc. (In re First Alliance Mortg. Co.)*, 471 F.3d 977, 995 (9th Cir. 2006). "Its coverage has been described as sweeping, embracing anything that can properly be called a business practice and at the same time is forbidden by law." *Id.* (internal quotations and citation omitted). "Each prong of the UCL is a separate and distinct theory of liability . . . [and] . . . offers an independent basis for relief." *Lozano v. AT&T Wireless Servs., Inc.*, 504 F.3d 718, 731 (9th Cir. 2007) (citation omitted). It "borrows violations of other laws and treats them as unlawful practices that the unfair competition law makes independently actionable." *Cel–Tech Commc'ns, Inc.*, 20 Cal. 4th at 180 (internal quotations and citations omitted).

Defendant moves to dismiss the fifth cause of action, asserting, with respect to Plaintiff's statutory unfair competition claim, that he "is willing to submit that [his] Motion should be granted with leave to amend,"[5] but also arguing, with respect to the common law unfair competition claim, that it fails for the same reasons Plaintiff's Lanham Act claim fails. (Def.'s Reply at 7 (citing *Cleary v. News Corp.*, 30 F.3d 1255, 1262-63 (9th Cir. 1994) ("This Circuit has

---

[5] Because, in his reply, Defendant concedes that his motion should be granted with leave to amend as to Plaintiff's statutory unfair competition claim, the Court need not address the arguments, advanced in the opening brief, that the claim is preempted by copyright law.

consistently held that state common law claims of unfair competition and actions [brought] pursuant to California Business and Professions Code section 17200 are 'substantially congruent' to claims made under the Lanham Act.") (further citations omitted))).

To the extent that Plaintiff's statutory and common law unfair competition claims rise and fall with its Lanham Act claim, the claims are dismissed with leave to amend because, as set forth above, Plaintiff's Lanham Act claim is dismissed with leave to amend.

### E. Plaintiff's improper prayers for relief are dismissed.

Defendant asserts that Plaintiff seeks several forms of relief "not available under controlling law." (Def.'s Mot. at 20.) He specifically challenges Plaintiff's prayers for punitive damages for breach of contract, compensatory or punitive damages for unfair competition, and statutory damages and attorney's fees for infringement of unregistered copyrights.[6] (*Id.* at 20.)

As discussed *supra* Part III.A, Plaintiff concedes that it does not have a viable copyright claim. Any prayers for relief related to that claim are thus dismissed.

In connection with the third cause of action for breach of the non-disclosure agreement, Plaintiff asserts that "[t]he actions of Defendant[] were willful and malicious and warrant the imposition of punitive damages." (Compl. ¶ 78.) California courts have held that punitive damages may not be awarded for breach of contract. *City of Hope Nat. Med. Ctr. v. Genentech, Inc.*, 43 Cal. 4th 375, 392 (2008); *Cates Constr., Inc. v. Talbot Partners*, 21 Cal. 4th 28, 61 (1999) ("In the absence of an independent tort, punitive damages may not be awarded for breach of contract 'even where the defendant's conduct in breaching the contract was wilful, fraudulent, or malicious.'"). Accordingly, Plaintiff's prayer for punitive damages in connection with his claim for breach of the non-disclosure agreement is dismissed.

---

[6] The Court notes that Plaintiff does not address Defendant's motion to dismiss certain prayers for relief. *See* Pl.'s Opp'n at 11. Instead, Plaintiff states: "In the interests of clarity – and preventing Defendant from misconstruing the contents of a global prayer for relief with forms of relief allowed for each of cause of action – Plaintiff respectfully requests leave to amend to plead the precise prayers for relief within each specific cause of action." *Id.* This misses the point. Many of Plaintiff's prayers for relief are included not only in a global prayer for relief but also within the body of the complaint. In any event, despite the fact that the format of the current complaint is the same format Plaintiff proposes to follow if granted leave to amend, the Court finds that Plaintiff should be able to remedy these deficiencies in an amended pleading.

With respect to his claim under California Business and Professions Code section 17200, Plaintiff prays for a variety of relief, including compensatory and punitive damages. (Compl. ¶¶ 89-92.) A claim under section 17200 of the Business and Professions Code will not support an award of punitive damages. *In re Wal-Mart Stores, Inc. Wage & Hour Litig.*, 505 F. Supp. 2d 609, 620 (N.D. Cal. 2007) (citing *Newport Components v. NEC Home Electronics*, 671 F. Supp. 1525, 1550–51 (C.D. Cal. 1987)). An action under section 17200 "is equitable in nature; damages cannot be recovered." *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1148 (2003) (internal citations omitted). In such cases, '[p]revailing plaintiffs are generally limited to injunctive relief and restitution.'" *Id.; see also Dozier v. Maispace*, No. C–05–1761 PVT, 2007 WL 518622, *10 (N.D. Cal. Feb. 13, 2007) (holding that neither compensatory nor punitive damages are recoverable under section 17200) (citing *Industrial Indemnity Co. v. Santa Cruz Cnty. Superior Court*, 209 Cal. App. 3d 1093, 1096 (1989)). Therefore, Plaintiff's prayer for actual damages and punitive damages in connection with his section 17200 claim is dismissed.

## IV.   CONCLUSION

For the reasons set forth above, Defendant's motion to dismiss is granted. The first cause of action for copyright infringement is dismissed without leave to amend. The second cause of action for false designation of origin/unfair competition under the Lanham Act is dismissed with leave to amend. The fourth cause of action for breach of confidence is dismissed with leave to amend. The fifth cause of action for statutory and common law unfair competition is dismissed with leave to amend.

Given that Plaintiff seeks to assert an entirely new cause of action for misappropriation of trade secrets, Plaintiff may file a properly noticed motion for leave to file an amended complaint that includes Plaintiff's proposed cause of action for misappropriation of trade secrets, or the parties may stipulate to the filing of such an amended pleading. Any such motion or stipulation shall be filed within 14 days of this order, in which case Plaintiff shall file its amended complaint as an exhibit to the parties' stipulation or as an exhibit to Plaintiff's motion. This way, Plaintiff need only file a single amended complaint that includes the proposed cause of action and cures the deficiencies discussed below. If no motion or stipulation is filed within 14 days of this order,

then Plaintiff shall file an amended complaint curing the deficiencies discussed above, but not including a new claim for misappropriation of trade secrets, within 30 days of this order.

IT IS SO ORDERED.

Dated: May 7, 2014

_____
KANDIS A. WESTMORE
United States Magistrate Judge