United States District Court
Northern District of California

SAN JOSE OPTIONS, INC.,

    Plaintiff,

v.

HO CHUNG YEH,

    Defendant.

Case No.: CV 14-00500-KAW

ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS

Ho Chung Yeh moves to dismiss the first and fourth causes of action in San Jose Options Inc.'s first amended complaint. The motion has been fully briefed. Having considered the papers filed by the parties and the arguments offered by counsel during the hearing on the matter, the Court GRANTS the motion in part and DENIES the motion in part, as set forth below.

### I.    BACKGROUND

#### A.    Factual background

San Jose Options, Inc. ("Plaintiff") operates an online options trading school, which offers courses designed to teach students proprietary stock option trading strategies. (1st Am. Compl. ("FAC") ¶ 9, Dkt. No. 25.) Course materials include manuals, which contain explanations of many "proprietary advanced [trading] strategies, each of which contains unique 1) option trading structure architectures to initiate trades; [and] 2) adjustment processes to manage a trade known as the adjustment system." (*Id.* ¶ 20.) These trading strategies include the "Unbalanced Condor," the "Broken Wing Butterfly," and the "Front-ratio Spread." (*Id.* ¶ 24.)

Plaintiff also teaches an option trading process known as the "Revolver Adjustment" system, which contains a unique and original proprietary formula known as the "DV Ratio." (*Id.*

¶ 25.)  This "formula concentrates on developing a method to understand and manage the direction of an option spread based on a correlation between the volatility movement and price movements."  *(Id.)*

Any student participating in Plaintiff's online course is required to accept Plaintiff's online terms of service, which include a non-disclosure agreement, "[a]s a condition precedent [to] paying for an online course, and at each time before a student can login to access any of the proprietary content hosted online."  (*Id.* ¶ 21.)  Students accept these terms by the click of a button, and Plaintiff asserts that requiring a student to do so "exhibit[s] a strong attempt to retain control over all content located behind the password protected website."  (*Id.* ¶ 22.)

Ho Chung Yeh ("Defendant"), who operates a competing online stock options trading course website, joined Plaintiff's online course on February 3, 2010.  (*Id.* ¶¶ 11, 41.)  Between February 3, 2010 and October 22, 2012, Defendant accessed Plaintiff's website about ten times, for various periods of time, including one session that spanned over a 48-hour period.  (*Id.* ¶¶ 37-38.)  Plaintiff claims that Defendant "downloaded many if not all of SJ Option's instructional videos."  (*Id.* ¶ 39.)

Defendant identified himself via email correspondence using the pseudonym "Mike."  (*Id.* ¶¶ 42, 45.)  He befriended Plaintiff's principal, Mr. Puma, through multiple emails, testimonials, and written correspondence.  (*Id.* ¶ 43.)  As a result of this relationship, Mr. Puma taught and educated Defendant on Plaintiff's proprietary material over the course of 170 emails, live classes, video recordings, trading manuals, and personal mentoring sessions.  (*Id.* ¶ 44.)

On January 2010, Defendant's website offered only one basic course in options strategies that were well known in the stock options industry.  (*Id.* ¶ 48.)  In April 2010, two months after Defendant acquired access to Plaintiff's proprietary online content, Defendant advertised an upcoming new advanced course, which he began teaching in July 2011.  (*Id.* ¶¶ 49-50.)

When Defendant joined Plaintiff's online course, Defendant never disclosed that he was the owner of the competing website.  (*Id.* ¶ 62.)  Plaintiff first learned of a possible connection between its website and Defendant's website on or around December 19, 2011, when a student, who was enrolled in both courses, notified Mr. Puma that Defendant was possibly selling the

same strategies that Plaintiff teaches to its own students. (*Id.* ¶ 65.) Plaintiff conducted an initial investigation, which it abandoned, due to its inability to access Defendant's password-protected content or determine the website's owner. (*Id.* ¶¶ 66-67.)

On April 14, 2013, while Mr. Puma was conducting a live demonstration of Plaintiff's proprietary trading techniques to potential students, he was approached by another individual who claimed that he had learned the same content, including Plaintiff's "Revolver Adjustment" system, while taking Defendant's advanced course. (*Id.* ¶ 68.) Mr. Puma then received copies of Defendant's advanced course materials and confirmed that Defendant's manuals contained all three of Plaintiff's proprietary strategies and that Defendant claimed original ownership of the material. (*Id.* ¶ 69.) Plaintiff asserts that Defendant misappropriated and used its "DV Ratio" technique without changing the name and by misapplying the concepts behind the technique in a logically and mathematically impossible way that could be detrimental to Defendant's students and indirectly affect Plaintiff's reputation as the originator of the technique. (*Id.* ¶ 71.)

Plaintiff claims that Defendant misappropriated the content of the following trade strategy structures: (1) the "Unbalanced Condor," which Defendant renamed as "Butter Condor," (2) the "Broken Wing Butterfly," which Defendant renamed as "Ratio Butterfly," (3) the "Front-ratio spread," which Defendant renamed as "Ratio Vertical," and (4) the "risk free" trade strategy structure, which Defendant renamed as "Landmine." (*Id.* ¶¶ 72-75.)

Upon confirming the theft of his educational content on April 14, 2013, Mr. Puma directly emailed Defendant's website and requested that Defendant cease and desist his infringing activities. (*Id.* ¶ 77.) Upon receipt of that cease and desist notification, Defendant immediately removed the link for his advanced course and deleted all images relating to Defendant's option courses from his website. (*Id.* ¶ 78.) Plaintiff claims that as a result of Defendant's acts, it incurred significant losses in 2013 from a decrease in tuition revenue when many potential students chose to enroll in Defendant's advanced course instead of Plaintiff's. (*Id.* ¶ 76.)

### B.  Procedural background

On January 31, 2014, Plaintiff filed his complaint, asserting claims for (1) copyright infringement; (2) false designation of origin/unfair competition under Section 43(a) of the

3

Lanham Act, 15 U.S.C. § 1125; (3) breach of the non-disclosure agreement; (4) breach of confidence; and (5) unfair competition under common law and California Business and Professions Code section 17200. (Compl. ¶¶ 55-61, 62-69, 70-78, 79-86, 87-92.) On March 13, 2014, Defendant moved to dismiss Plaintiff's claims, except for the third cause of action for breach of the non-disclosure agreement. (Def.'s Mot. to Dismiss, Dkt. No. 8.) On March 7, 2014, the Court granted Defendant's motion with leave to amend and ordered the parties to meet and confer over Plaintiff's request to seek leave to amend the complaint to include additional causes of action. (Mar. 7, 2014 Order, Dkt. No. 22.)

The parties stipulated to the filing of the FAC on March 21, 2014, which this Court approved. (Stipulation & Order, Dkt. No. 24.) In the FAC, Plaintiff asserts claims for (1) fraud; (2) misappropriation of trade secrets; (3) breach of non-disclosure agreement; (4) breach of confidence; and (5) violation of California Business and Professions Code section 17200. (FAC ¶¶ 85-93, 94-103, 104-111, 112-122, 123-132, Dkt. No. 25.) On June 11, 2014, Defendant moved to dismiss Plaintiff's claims for fraud and breach of confidence. (Def.'s Mot., Dkt. No. 26.) Plaintiff filed its opposition to the motion on June 25, 2014. (Pl.'s Opp'n, Dkt. No. 28.) Defendant's reply followed on July 2, 2014. (Def.'s Reply, Dkt. No. 29.) On August 21, 2014, the Court held a hearing on the motion.

## II.     LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a party may file a motion to dismiss based on the failure to state a claim upon which relief may be granted. A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the claims asserted in the complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).

In considering a 12(b)(6) motion, the court must "accept as true all of the factual allegations contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (citation omitted), and may dismiss the case or a claim "only where there is no cognizable legal theory" or there is an absence of "sufficient factual matter to state a facially plausible claim to relief." *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009)).

A claim has facial plausibility when a plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citation omitted). In other words, the facts alleged must demonstrate "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "Threadbare recitals of the elements of a cause of action" and "conclusory statements" are not adequate. *Iqbal*, 556 U.S. at 678; *see also Epstein v. Wash. Energy Co.*, 83 F.3d 1136, 1140 (9th Cir. 1996) ("[C]onclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss for failure to state a claim."). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully . . . . When a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557) (internal citations omitted).

Generally, if the court grants a motion to dismiss, it should grant leave to amend even if no request to amend is made "unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (quoting *Cook, Perkiss and Liehe, Inc. v. N. Cal. Collection Serv. Inc.*, 911 F.2d 242, 247 (9th Cir. 1990)).

### III.  DISCUSSION

**A.  Plaintiff cannot state a viable fraud claim.**

"The elements of fraud . . . are (a) misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of falsity (or 'scienter'); (c) intent to defraud, i.e. to induce reliance; (d) justifiable reliance; and (e) resulting damage." *Lazar v. Superior Court*, 12 Cal. 4th 631, 638 (1996) (internal quotations and citation omitted). To establish fraud through nondisclosure, it is necessary to show that the defendant had a legal duty to disclose the omitted fact. *Buck v. Threshold Enters., Ltd.*, 155 Cal. App. 4th 798, 807 (2007) (internal quotation marks omitted), overruled on other grounds by *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 337 (2011).

5

Causes of action sounding in fraud are subject to a higher pleading standard pursuant to Federal Rule of Civil Procedure 9. "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). This rule requires that "the circumstances constituting the alleged fraud be specific enough to give defendants notice of the particular misconduct . . . so that they can defend against the charge and not just deny that they have done anything wrong." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (internal quotation marks omitted). Rule 9(b) demands that a plaintiff alleging fraud plead the "who, what, when where, and how" of a defendant's alleged misconduct. *Id.*

Defendant argues that Plaintiff's fraud claim fails for three reasons. (Def.'s Mot. at 5, 6.) First, he contends that the use of a screen name alone cannot, as Plaintiff alleges, constitute fraud. (*Id.* at 5-6.) Second, he asserts that Defendant's alleged failure to disclose that he was a competitor is not actionable absent a legal duty to disclose such information. (*Id.* at 6.) Third, he argues that Plaintiff's inability to identify the owner of the "BPF website" defeats any allegation that Plaintiff reasonably relied on any alleged material misrepresentation or omission. *(Id.)*

In opposition, Plaintiff argues that he has sufficiently alleged a plausible fraud claim and has satisfied the applicable heightened pleading standard because he has identified the who—Defendant Yeh, the what—the material misrepresentation concerning his identity and the material omission concerning Defendant's status as a competitor, the where—email communications, live classes, telephone calls, and personal mentoring sessions, the when—the date on which Defendant enrolled in Plaintiff's online course, and the how—Defendant's participation and interaction with Plaintiff and Plaintiff's online courses, including referring to himself as "Mike," accepting Plaintiff's terms of use, paying course fees, and repeatedly logging in to Plaintiff's online trading forum." (Pl.'s Opp'n at 5, 6.) These arguments fail.

At the hearing, Plaintiff argued that Defendant's use of the name "Mike" and Defendant's representation that he was an ordinary student provides the basis for his fraud claim. The Court, however, rejects Plaintiff's argument that either the use of the name "Mike" or the representation

that Defendant was a student, are material or false. Plaintiff does not argue that it would have acted any differently if Defendant had identified himself by a different name. This defeats the argument that the use of the name "Mike" was somehow material or that Plaintiff somehow reasonably relied on Defendant's use of the name "Mike." In addition, that Defendant identified himself by one name as opposed to another does not change that he was a student who paid the course fee, signed the non-disclosure agreement, and enrolled in Plaintiff's course to learn stock options trading techniques. Thus, Defendant's representation that he was a student was, in fact, accurate. That he intended to use the material to launch his own competing website is something for which Plaintiff may seek redress under a theory of breach of contract, or, as discussed below, breach of confidence, but not fraud.

Moreover, Plaintiff's fraud claim ultimately rests on an alleged material omission, i.e., Defendant's failure to disclose that he was a competitor, and for that reason, it is defective. *See Buck*, 155 Cal. App. 4th at 807. Plaintiff offers no legal authority that allows a fraud claim to lie on the basis of nondisclosure where there is no duty to disclose the alleged omitted material fact. Plaintiff did not allege, in the amended complaint, or at the hearing, that any such duty exists, and in the opposition, it does not identify any such duty. *See generally* FAC; Pl.'s Opp'n. Further, there are no allegations that Plaintiff's website requested information regarding a student's status as a competitor, nor was there a notice to competitors that they were not eligible to take the course. Thus, Defendant had no duty to disclose his status as a competitor. As this is a required element of Plaintiff's fraud claim, it is not viable and thus subject to dismissal.

Accordingly, Plaintiff's fraud claim is dismissed without leave to amend.

///
///
///
///
///
///

### B. Plaintiff states a viable breach of confidence claim.[1]

To prevail on a claim for breach of confidence under California law, a plaintiff must demonstrate that: (1) the plaintiff conveyed "confidential and novel information" to the defendant; (2) the defendant had knowledge that the information was being disclosed in confidence; (3) the defendant voluntarily received the information, with the understanding that the confidence was to be maintained; and (4) there was a disclosure or use in violation of the understanding. *Entm't Research Grp. Inc. v. Genesis Creative Grp., Inc.*, 122 F.3d 1211, 1226 (9th Cir. 1997) (citations omitted); *Faris v. Enberg*, 97 Cal. App. 3d 309, 324 (1979).

Defendant challenges the viability of Plaintiff's breach of confidence claim on three separate grounds. First, Defendant maintains that Plaintiff's allegations that it disclosed information to Defendant under an "implicit" confidence is insufficient. (Def.'s Mot. at 7.) Second, Defendant argues that Plaintiff has not, and cannot, allege that Defendant voluntarily received any information in confidence, as he was not given the opportunity to reject any such information before Plaintiff shared it with him. (*Id.* at 8.) Third, and only with respect to the alleged "personal mentoring sessions," Defendant argues that Plaintiff has not provided the "where, when, or how" those sessions occurred.[2] (*Id.*)

In opposition, Plaintiff asserts that during the numerous phone calls, personal mentoring sessions, and emails, Plaintiff's principal disclosed material beyond that contained in the course manuals and videos, shared concepts before they were incorporated into course content, and gave explanations that were much more detailed than those offered to regular clients. (Pl.'s Opp'n at 9.) Plaintiff also argues that its emails to Defendant contained the following disclaimer: "This

---

[1] In the order granting Defendant's motion to dismiss Plaintiff's original complaint, Plaintiff's failure to sufficiently allege that Defendant had the opportunity to reject the information he purportedly received in confidence was one of the three grounds for dismissal of that cause of action. May 7, 2014 Order at 10. In light of the arguments the parties now advance in connection with the instant motion, the Court revisits that analysis as set forth in this order.

[2] This argument misses the mark. Plaintiff's breach of confidence claim only concerns the "confidential and proprietary information that was conveyed in confidence over email." FAC ¶ 113.

8

message is confidential and sent by San Jose Options, Inc. solely for the use by the intended recipient. You are hereby notified that any use, distribution, or copying of this communication is strictly prohibited." *(Id.)* Plaintiff contends that "[t]aken as a whole, viewing the forest instead of a single individual email, the FAC pleads a very cognizable theory of why and how Defendant YEH executed a decision to receive confidential information before engaging subsequent, successive email correspondence." *(Id.)*

Plaintiff's position is not inconsistent with the two cases Defendant cites in support of his own position. In *Faris v. Enberg*, the plaintiff allegedly communicated information in confidence on one occasion and did not inform the defendant beforehand that the information about to be communicated was to be held in confidence. 97 Cal. App. 3d at 315. The defendants prevailed on summary judgment. *Id.* at 313. On appeal, the court affirmed, holding that "[w]e do not believe that the unsolicited submission of an idea to a potential employee or potential business partner, even if that person then passes the disclosed information to a competitor, presents a triable issue of fact for confidentiality." *Id.* The court clarified that direct or circumstantial evidence is required to establish a confidential relationship, which could be inferred from proof of the existence of an implied-in-fact contract, proof that material was protected by reason or sufficient novelty and elaboration, or proof of a particular relationship between the parties. *Id.* at 323. Thus, while Defendant cites to this case for the narrow proposition that a breach of confidence claim cannot lie absent an allegation that the recipient had a chance to reject information disclosed with the understanding that it was to be maintained in confidence, *Faris* leaves open the possibility that where, as here, the nature of the information itself or the particular relationship between the parties, may support a breach of confidence claim.[3] Here, that is precisely what Plaintiff strives to achieve by alleging the facts discussed above.

Defendant's reading of *Tele-Count Engineers, Inc. v. Pacific Telephone & Telegraph. Co.*, 168 Cal. App. 3d 455, 465 (1985) is also misguided. There, the jury returned a defense verdict on

---

[3] *Faris* also disposes of Defendant's additional argument that Plaintiff's breach of confidence claim fails because Plaintiff only alleges an "implicit" confidence. The case squarely contemplated the possibility that a confidential relationship could be established by direct or circumstantial evidence. *See Faris,* 97 Cal. App. 3d at 323.

9

the plaintiff's breach of confidence claim. *Id.* at 461. The plaintiff appealed, challenging the court's jury instructions, including the instruction that plaintiff could only prevail on its breach of confidence claim if it proved that the defendant "had an opportunity to reject receipt of the information on a confidential basis before its disclosure." *Id.* at 465 (internal quotation marks omitted). The court rejected the plaintiff's contentions. It concluded:

> An opportunity to reject is mandatory if the defendant is charged with having voluntarily assumed the obligation to maintain the confidentiality of disclosed information. . . . Of course, this element may be established by circumstantial evidence or inferred from circumstances surrounding the disclosure, and a breach of confidence instruction would be more complete by so informing the jury.

*Id.* at 465-66.

While Defendant urges the Court to read *Tele-Count Engineers* as standing for the limited proposition that a defendant must have an opportunity to reject information that is shared in confidence before that information is so disclosed, that is simply not the case. *Tele-Count Engineers* expressly allows a breach of confidence claim to lie where that element may be established by circumstantial evidence. 168 Cal. App. 3d at 465-66.

Here, the allegations in the first amended complaint entitle Plaintiff to the opportunity to present such evidence. Plaintiff alleges that defendant, as a student enrolled in Plaintiff's online course, accepted Plaintiff's online terms of service, including a non-disclosure agreement, upon paying fees and at each time prior to accessing course materials. (FAC ¶ 21.) Plaintiff also alleges that upon logging in to Plaintiff's website, students receive a notification that logging in constitutes acceptance of Plaintiff's non-disclosure agreement. (*Id.* ¶ 31.) Plaintiff further alleges that it shares its trade secrets and proprietary material only with students who gain confidential access to that material under the protections of the non-disclosure agreement. (*Id.* ¶ 29.) These allegations, if proven, may be sufficient to sustain Plaintiff's claim for breach of confidence. That Plaintiff has failed to allege directly what may be shown indirectly does not warrant dismissal of this cause of action. *See Faris*, 97 Cal. App. 3d at 323; *Tele-Count Engineers*, 168 Cal. App. 3d at 461.

Accordingly, Defendant's motion to dismiss is DENIED with respect to Plaintiff's breach of confidence claim.

10

### IV. CONCLUSION

For the reasons set forth above, Defendant's motion to dismiss is GRANTED with respect to the fraud claim and DENIED with respect to the breach of confidence claim.

IT IS SO ORDERED.

Dated: September 4, 2014

_____
KANDIS A. WESTMORE
United States Magistrate Judge